| United States District Court | Southern District of Texas |
|---|---|

Advanced Indicator and  
Manufacturing, Inc., §

      Plaintiff,

versus                                 Civil Action H-18-3059

Acadia Insurance Company,

      Defendant.

## Opinion on Summary Judgment

1. *Introduction.*

    Advanced Indicator and Manufacturing, Inc., had an insurance policy with Acadia Insurance Company. In 2017, Indicator submitted a claim for its roof that was damaged by Hurricane Harvey. After an investigation, Acadia found that the damage to the building was not exclusive to Harvey and denied the claim. Indicator sued Acadia for (a) breach of contract, (b) common-law bad faith and fair dealing, (c) violating the Texas Insurance Code, and (d) violating the Deceptive Trade Practices Act. Acadia moved for summary judgment. Acadia will prevail.

2. *Background.*

    Hans Karani owns Advance Indicator and Manufacturing, Inc. It has a warehouse on Brittmoore Road in Houston. Acadia Insurance Company is a subsidiary of Union Standard Insurance Company. From 2001 to 2017, Acadia insured Indicator's building.

    The policy covered losses caused by wind, hail, rain, and other natural perils. In 2009, 2010, and 2014, Acadia did loss control surveys on Indicator's property to determine insurability and needed changes to the policy before renewal. Based on these evaluations, Acadia maintained an underwriting file

noting the state of Indicator's building each year.

In May 2015, Indicator filed a claim for interior water damage caused by a storm. In June, that claim was inspected by an adjuster hired by Acadia and Thomas Ross, an adjuster hired by Indicator. Together, they documented and photographed water intrusion of the building's storage, fabrication, shop, and training spaces. The claim was not covered because Ross and Acadia's adjuster could not find a leak. Two week after the inspection, Karani had employees cut parts of the dry wall of the building's training room and paid 4 Seasons Roofing to seal and coat the roof.

From August 17, 2017, to September 2, 2017, Harvey, a Category 4 hurricane that slowed to be a tropical storm, hit Houston. On September 1, 2017, Indicator submitted a claim with Acadia saying that Harvey destroyed parts of its roof and gutter, leading to water damage inside the building.

Acadia sent Kim Stewart, an independent adjuster from U.S. Adjusting. Before Stewart inspected the building, he reviewed Karani's 2015 claim. He also asked Ross and Karani questions about the building's upkeep. Karani and Ross "felt" that Stewart was biased, so they refused to let him inspect Indicator's roof. At Karani's request, Acadia replaced Stewart with Nicholas Warren, an independent adjuster from VeriClaim, Inc.

On October 24, 2017, Acadia hired ProNet Group, Inc., to investigate Indicator's Harvey claim. Ross met with Warren and ProNet's engineer, Jason Watson. Together, the three inspected the building, paying close attention to the areas that were damaged in 2015. Watson concluded that the leaks occurred in the same areas reported in 2015 and that the water damage had not been repaired. Based on Watson's report, Warren advised Acadia to deny Indicator's claim.

On December 18, 2017, Warren told Acadia that Ross had given him invoices showing the repairs made to the roof in 2015. Warren determined, however, that the repairs did not change Watson's conclusions. Four days later, Acadia denied Indicator's claim.

Advanced Indicator and Manufacturing, Inc., sued Acadia Insurance Company and Nicholas Warren in state court. It was removed to the Southern District of Texas, and Warren was dismissed as improvidently joined.

Acadia moves for summary judgment saying that (a) Indicator's extra-contractual claims do not make a *prima facie* case for breach of contract and (b) that Indicator's common-law bad faith and statutory claims fail because this is a disagreement over causation for insurance coverage.

3. *The Policy.*

The policy is unambiguous. In Texas, insurance policies are contractual in nature.[1]

The policy covers any "direct physical loss or damage" to Indicator's property that is not otherwise excluded or limited by its terms. The policy does not cover losses or damages that are caused by:

> "wear and tear, rust or other corrosion, decay, deterioration, hidden or latent defects or any quality in the property that causes it to damage or destroy itself, continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more."

The policy does not cover damages caused by the "neglect of [Indicator] to use all reasonable means to save and preserve the property from further damage at and after the time of loss."

The interior of Indicator's building is covered only if it "first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters." Acadia will not, however, pay for a loss or damage caused by, or resulting from, "faulty, inadequate or

---

[1] *RSUI Indemnity Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

defective...workmanship, repair, construction...Materials used in repair...; or Maintenance."

4. *Evidence.*

　A. *2015 Repairs.*

On June 26, 2015, Indicator contracted with 4 Seasons Roofing to repair existing leaks in its roof. Specifically, 4 Seasons replaced loose or missing screws, repaired the holes in its metal shield, repaired any lifted seams, sealed vents, and sealed its roof with a rubberized aluminum coating. In the contract, 4 Seasons guaranteed up to two years without leakage.

　B. *ProNet's Report.*

Watson determined that Harvey did not damage the metal panel roof coverings. He also found that the reported intrusion to the interior of the building was the result of roof leaks caused by general deterioration and the quality of workmanship during its original construction. Watson concluded that those leaks occurred in the same areas reported in Indicator's 2015 claim. He further concluded that the interior water damage at the training room had not been repaired since it was photographed in 2015.

　C. *Indicator's Witnesses.*

Indicator offers the unsworn declaration of Peter de la Mora, a registered engineer. In February 2018, he interviewed Karani, inspected and photographed Indicator's building, and reviewed weather data. Contrary to the 2015 report and the 2017 investigation, he concluded that all damage to Indicator's building was caused solely by Harvey.

Under the federal rules, unsworn expert testimony is inadmissible as summary judgment evidence. Accordingly, de la Mora's declaration is struck.

D.  *Indicator's Underwriting File.*

Indicator points to Acadia's underwriting file maintained for years 2009, 2010, and 2014 to suggest that Acadia's continuing coverage of the building shows that the building sustained no damage during those years until the storm of 2015. Loss control surveys differ from claim inspections in both rigor and purpose. Nonetheless, Indicator's 2009 survey notes that the roof "regularly leaked and was deteriorated."

E.  *Art Boutin's Cost of Repair Estimate.*

Art Boutin is a licensed public adjuster. In September 2018, Boutin interviewed Karani. Then, he inspected, photographed, and measured Indicator's property. He then prepared a Cost of Repair Estimate for damage caused solely by Hurricane Harvey using April and August 2017 pricing. Boutin's report was also unsworn and not shared until after his deposition, in violation of the federal rules. Accordingly, Boutin's report is struck.

4.  *Breach.*

Acadia did not breach the policy. Neither party disputes that there was a policy and that Indicator paid its premiums under the policy. Indicator contends that Acadia breached the policy by (a) not covering its Harvey claim; and (b) failing to properly investigate its claim.

Specifically, Indicator asserts that Acadia breached the contract by conducting a "results-oriented" investigation of its Harvey claim. It indigently announces that the investigator must be biased because he is paid by the insurer. Indicator insists that all of its losses were caused by Harvey and that Acadia deliberately focused solely on photographs from its 2015 claim while ignoring Indicator's underwriting file that says the building was in good condition up to 2015. In doing so, Indicator attacks the adjusters instead of their findings. Acadia responds that it denied Indicator's claim because it failed to segregate its losses.

A.   *The Claim.*

The thrust of the policy is that (a) losses caused by poor maintenance are not covered, (b) losses arising from defects inherent in the property's construction are not covered, (c) weather damage to the property's exterior is covered, and (d) damage to the interior is covered only if caused by weather damage to the exterior.

Acadia denied Indicator coverage because it found that the damage to Indicator's roof was due to deterioration, defects in the building's construction, and poor maintenance. Denying Indicator's claim for those practical justifications does not breach the policy, and Indicator's disagreement does not change the facts supporting the denial. Its claim is essentially that if the insurer does not pay what is asked, then it cheated.

B.   *The Investigation.*

Acadia's investigation of Indicator's claim was thorough. An insurer has a duty to investigate claims rigorously and in good faith.[2] That duty is breached when the insurer knew or should have known that it had no reasonable basis for denying or delaying payment of a claim.[3]

Acadia timely acknowledged Indicator's claim when it was filed and sent Kim Stewart to inspect Indicator's building in the presence of Karani and his own adjuster, Thomas Ross. For the sake of appeasing Karani, Acadia even replaced Stewart with Nicholas Warren, an adjuster from a different company.

Acadia's appraisal of Indicator's claim was not based solely on photographs from 2015, but on an extensive consideration of the evidence. It hired an independent forensic engineer, Jason Watson, to inspect Indicator's building. His investigation and findings were comprehensive and specific. Watson's report was based on (a) an interview with Thomas Ross; (b) an

---

[2] *Viles v. Security Nat. Ins. Co.*, 788 S.W.2d 566, 568 (Tex. 1990).

[3] *Arnold v. Nat. Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987).

inspection of the building's exterior, roof, interior, and damaged spaces; (c) weather reports from the National Oceanic and Atmospheric Administration, National Weather Service, and National Centers for Environmental Information to cross-reference data on Harvey's impact to the area; (d) data about the structure of Indicator's property from the Harris County Appraisal District website; (e) historic satellite photographs of the property from Google Earth; (f) a review of the American Society of Civil Engineers Guideline for Condition Assessment of Building Envelope and Minimum Design Loads for Buildings and Other Structures; (g) a report on Harvey from the National Weather Service; and finally (h) photographs taken by Acadia during its 2015 inspection of the property.

Watson's report incorrectly found that no repairs had been done on Indicator's building since it filed its 2015 claim. This was because Ross did not supply evidence of those repairs until December 2017 – over a month after his inspection. He breached his duty to inform and cooperate. When Warren received the invoices showing the repairs, he considered the new data and found that the rubber coating actually made many of the damages to Indicator's building worse. His conclusions about the damage to the property remained the same.

    C.    *Concurrent Causation Doctrine.*

In Texas, the insured has the burden of showing that its damages are covered by its policy.[4] Indicator's claim fails because it has no evidence of segregated damages. Evidence must be given to enable a reasonable jury to apportion covered as opposed to non-covered losses. Since recovery is limted only to covered causes of loss, the failure to segregate covered and non-covered

---

[4] *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

causes of loss is fatal to the whole claim.[5]

Indicator relies on de la Mora's declaration that the roof was damaged solely by Harvey. If his expert testimony were admissible, it does not differentiate losses caused by Harvey from preexisting losses. Moreover, de la Mora's declaration and deposition are not in agreement. In his deposition, he admits that his report addresses damage caused by *or* exacerbated by Harvey, but in his declaration he says that the damage was caused solely by Harvey. At best, de la Mora contradicts himself – at worst he ultimately admits there is more than one cause of damage to the property.

Because de la Mora's testimony would not help a jury apportion covered and non-covered damages to the property and is inadmissible in the first place, Indicator's claim fails.

D. *Extra-Contractual Claims.*

Because there was no breach of the policy, Indicator's extra-contractual claims for common-law bad faith, the Texas Insurance Code, and DTPA also fail as a matter of law. These claims are over-pleaded and under-documented. This case is a dispute over a policy. There are no facts to show bad faith or fraudulent acts. Nothing in the adjusting of this claim was exceptional. Karani, on the other hand, withheld evidence and called the first appraiser biased after he asked a few questions. Acadia was not scamming, but it appears that Karani may have been. Merely disagreeing over the money that should be paid or on coverage does not evince malfeasance.

5. *Conclusion.*

Advanced Indicator and Manufacturing filed an insurance claim with its provider, Acadia Insurance Company, saying that its building was damaged by Hurricane Harvey. The property was inspected by Indicator's adjuster, two independent adjusters hired by Acadia, and an independent forensic engineer from ProNet, Inc. They concluded that the building's damages were not

---

[5] *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App. – Houston [14th Dist.] 2003, pet. denied).

exclusive to Harvey but were the result of poor maintenance and other historical damage.

Even if the opinions of Indicator's technicians were admissible, they would not help segregate covered from non-covered losses. Thus, Indicator gives no evidence showing a breach of the policy. Because Indicator's breach of contract claim fails, its extra-contractual claims also fall flat. Advanced Indicator and Manufacturing, Inc., will take nothing from Acadia Insurance Company.

Signed on January 19, 2020, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge